[No. B145442. Second Dist., Div. Four. Feb. 15, 2001.]

GARY BRIGGS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

· COUNSEL

Michael P. Judge, Public Defender, Michael Suzuki and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brentford J. Ferreira and Phyllis C. Asayama, Deputy District Attorneys, for Real Party in Interest.

## Opinion

## VOGEL (C. S.), P. J.—

### Introduction

In a proceeding to commit Gary Briggs as a sexually violent predator pursuant to Welfare and Institutions Code section 6600 et seq., the People filed an affidavit of prejudice under Code of Civil Procedure section 170.6 to disqualify Judge Harold E. Shabo. The affidavit was not timely filed, because Judge Shabo had already conducted hearings on Briggs's motion to exclude evidence. Nevertheless, Judge Shabo purported to "waive the timeliness" and he disqualified himself. Briggs petitioned this court for a writ of mandate to compel Judge Shabo to deny the People's disqualification motion. We issued an order to show cause. We now issue the writ as requested because the Code of Civil Procedure section 170.6 motion should have been denied as untimely, and the record does not support Judge Shabo's self-disqualification on alternative grounds described in Code of Civil Procedure section 170.1, subdivision (a)(6).

### Factual Background

In December 1998 the People filed a petition to commit Briggs as a sexually violent predator. That petition alleged pursuant to Welfare and Institutions Code sections 6600 and 6601 that Briggs had been convicted of designated sexually violent offenses, that prior to Briggs's scheduled release the Department of Corrections determined he was likely to be a sexually violent predator, and that two psychiatrists or psychologists designated as evaluators by the Director of the State Department of Mental Health determined Briggs has a diagnosed mental disorder and is likely to engage in sexual violence without appropriate treatment and custody.

For reasons not disclosed in the record, Briggs's probable cause hearing (Welf. & Inst. Code, § 6602) was continued numerous times. The deputy district attorney in charge of the case, in order to prepare for the upcoming probable cause hearing, contacted the Department of Mental Health in December 1999 to request updated reports from the two evaluators; he learned that one of the two evaluators, Dr. Schiff Gennis, was no longer on the department's panel; he requested that a replacement evaluator be designated; the department designated Dr. Malinek as a replacement evaluator, who interviewed Briggs and filed a report in December 1999.

Briggs filed a motion to exclude from the probable cause hearing the report and testimony of Dr. Malinek. The People filed opposition. The

People then filed supplemental opposition and Briggs filed supplemental points and authorities. The trial court (Judge Shabo) conducted hearings on the motion on July 7, August 16, and August 23, 2000. Judge Shabo considered declarations and exhibits attached to the moving and opposing papers, and heard testimony of Dr. Malinek and of George Bukowski, chief of the Department of Mental Health's sexually violent predator evaluation unit. On August 23, 2000, Judge Shabo denied Briggs's motion to exclude the report and testimony of Dr. Malinek from the probable cause hearing. He found that the department was authorized to designate a replacement evaluator and that the prosecutor had good cause and acted in good faith in requesting that a replacement evaluator be designated so that the evaluator's report and testimony could be considered to support the People's burden of proof at the probable cause hearing.

On October 24, 2000, that is, two months after Judge Shabo had ruled on Briggs's motion to exclude evidence, the People filed a peremptory challenge to Judge Shabo under Code of Civil Procedure section 170.6.

Briggs opposed the motion as untimely, partly because Judge Shabo had already conducted an evidentiary hearing concerning whether certain evidence would be considered at the probable cause hearing.

Judge Shabo stated: "The objections are noted. The Court's in a position because of what had happened, as I explained before, in regard to other cases[1] that however the Court were to rule on future issues before the Court, the Court has been compromised by virtue of the apparently ex parte communications with judges downtown and the reaction of the presiding judge that I don't have to go through again, asking which court I wish to be transferred to. Apparently the implication that was received by the person to whom the communication was made was that this judge deliberately refuses to follow the law or has refused to follow the law deliberately and that the numbers of appeals have all apparently been on the same issue, which is not true. Whether that's an interpretation of the judge or judges receiving the information or the person communicating the information, I don't know since I was not a party to any of those discussions. But I'm in a position at this point where if I rule for the People on their motions or against the People on their motions or for the defense or against the defense, it will look as though the Court's actions are based upon personal concerns, not upon the Court's view of the law, and for that reason I have decided to waive the timeliness requirements of C.C.P. Section 170.6. So your objections are noted, and I am honoring the affidavit."

---

[1]What happened before is explained by another hearing that we judicially notice as discussed *post*.

To explain Judge Shabo's comments about what had happened before, the People request that we take judicial notice of comments he made on September 27, 2000, in another sexually violent predator case against a Marvin Johnson. Briggs does not object to the request for judicial notice; on the contrary, in his reply brief he relies on the remarks during the Johnson hearing to support his contention that Judge Shabo should not have disqualified himself in this case. Absent objection, we grant the request for judicial notice.

While discussing a scheduling problem in the Johnson case on September 27, 2000, Judge Shabo made the following remarks: "I received a telephone call last Wednesday . . . from Judge Chavez, our presiding judge, who said to me 'The district attorneys are going to close you down. Where do you want to be transferred? There are too many writs. They have to take appeals in too many cases.' In exploring further, I talked with Judge Chavez and told him that there were options other than transferring me as supervising judge from this court, and I explained to him we did have Judge Luros here. If a 170.6 were filed, Judge Luros is available to handle these cases to the extent he's able to. I also explained to Judge Chavez that it was he and his predecessor, Judge Parkin, together with the district attorney's office and the public defender's office who agreed that this Court agree to take all of these S.V.P. cases back in 1996 . . . with the understanding that it would be better for one judge to attempt to deal with the new law and attempt to resolve any issues related to the new law and attempt to apply the law in ruling on any pretrial motions that needed to be made and doing everything other than jury trials since this facility does not accommodate jurors very well, this mental health court building. That seemed to satisfy Judge Chavez although it left me with an ethical problem. I spoke with Judge Bascue on Monday, at which time he told me that it was his understanding that the district attorney's office was of the belief that this judge was prejudiced against the People and that this judge was deliberately not following the law to the extent that the district attorney's office had to repeatedly engage in appellate remedies. My understanding from that conversation, the thrust of it, seemed to be that despite repeated Court of Appeal decisions on the same issue, this judge refused to follow the Court of Appeal, which I told him wasn't true, that what I was doing was deciding issues under a statute which has been amended several times a year every year since the statute has been in existence because so many gaps were left in the original legislation which the Legislature had to close by amendments that were urgency legislation. I just met with Judge Bascue, who told me that I should do what I felt was right, and that in no way did he feel I was prejudiced, but that the perception is there. I don't feel that I'm prejudiced; therefore, I'm not disqualifying myself from these cases because in consulting the books on judicial ethics,

as I have done since last week, and in talking with the author of that book, Judge Rothman, it's improper for a judge to disqualify him or herself if the judge does not feel that the judge is unfair. But I don't think it's improper for the judge to offer either side the opportunity to ask the judge to recuse himself if either side feels that the judge is prejudiced, so I'm making that offer to both sides. I'm placed in a position now where whichever way I rule, the ruling is subject to being seen as being the result of outside pressure or being the result of something other than a decision on the law, and so I'm making the offer at this point to disqualify myself on any or all of these cases, and each of you can convey to your supervisors the Court's offer." Judge Shabo added, "I can tell you that while I do not as a citizen appreciate the Sexually Violent Predator Law in the way it's written and that I think as a policy matter it would be better to offer treatment to prisoners when the crime is fresh when they are in state prison confinement anyway, that's a legislative choice, and I have tried to respect that choice and tried to not let my disagreement about policy affect the way I apply the law because my job as a judge is different from my job as a citizen."

## DISCUSSION

■■ A motion to disqualify a judge by filing an affidavit of prejudice pursuant to Code of Civil Procedure section 170.6 is untimely if made after the judge has conducted a pretrial hearing involving a determination of contested fact issues relating to the merits. (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 857-858, 861 [182 Cal.Rptr. 146]; see Code Civ. Proc., § 170.6, subd. (2) ["The fact that a judge . . . has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and *not* involving a determination of contested fact issues relating to the merits shall *not* preclude the later making of the motion" (italics added)].)

*Abdul Y.* held that a determination of contested facts on a motion to suppress evidence relates to the merits because it involves admissibility of evidence tending to prove or disprove the merits. (*Abdul Y., supra,* 130 Cal.App.3d at pp. 859-860; *People v. Bean* (1988) 46 Cal.3d 919, 949 [251 Cal.Rptr. 467, 760 P.2d 996].) Likewise here, Briggs's motion to exclude Dr. Malinek's report and testimony from the probable cause hearing related to the merits because granting it would have made more difficult the People's sustaining their burden of proof at the probable cause hearing. Without a replacement evaluator, the People would either offer the testimony of only one evaluator, or of both the original evaluators but Dr. Schiff Gennis would be subject to impeachment because the Department of Mental Health had removed her from the panel based on its determination that her performance was inadequate. In fact, this was a significant consideration in Judge Shabo's ruling on Briggs's motion. He held the department did not

abuse its authority to terminate Dr. Schiff Gennis from the panel and had authority to substitute another evaluator, and that the prosecutor had good cause and was acting in good faith in requesting appointment of a substitute evaluator. The court reasoned that in imposing on district attorneys or county counsel the duty to prosecute these proceedings the Legislature intended them to "have the power to control the evidence to be presented in discharging the district attorney's burden of proof."

The People's contention that the pretrial hearing involved only "a legal ruling, based strictly on an interpretation of statutory and case law," rather than contested facts (see, e.g., examples collected in *In re Abdul Y., supra*, 130 Cal.App.3d at pp. 858-859, fn. 9), is not supported by the record. The hearing involved contested facts as to the reasons Dr. Schiff Gennis was removed from the panel and the prosecutor's good faith in requesting that a replacement evaluator be designated. The court considered declarations and extensive testimony.

Therefore, the People's peremptory challenge of the judge under Code of Civil Procedure section 170.6 was untimely. It should have been denied as untimely. We are aware of no authority that a trial judge may "waive" the untimeliness of a section 170.6 affidavit. This would be inconsistent with the general rule that "[a] judge has a duty to decide any proceeding in which he or she is not disqualified." (Code Civ. Proc., § 170.)[2]

Primarily the People contend that Judge Shabo's self-disqualification may be upheld on alternative grounds. Although Judge Shabo mentioned "waiving" the untimeliness of the Code of Civil Procedure section 170.6 affidavit, his remarks as a whole, including those judicially noticed, indicate he was invoking the disqualification in Code of Civil Procedure section 170.1, subdivision (a)(6): "(a) A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6) For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

---

[2]The People suggest that *Woods v. Superior Court* (1987) 190 Cal.App.3d 885 [235 Cal.Rptr. 687] supports disregarding the untimeliness of a Code of Civil Procedure section 170.6 challenge. *Woods* is unique and limited to its facts. In *Woods* the defendant had two cases set for trial before the same judge. The judge granted a section 170.6 disqualification as to one but denied the other as untimely. The appellate court held that "[u]nder the particular circumstances of this case," involving peremptory challenges filed against the same judge on the same day on two cases pending simultaneously; "[t]o grant one challenge and reject the other creates an appearance of impropriety which should have been avoided by granting both." (190 Cal.App.3d at pp. 886-887.)

Judge Shabo did *not* declare a doubt about his own capacity to be impartial (clause B). ■ Clause C involves an objective test whether a reasonable member of the public at large, aware of all the facts, would fairly entertain doubts concerning the judge's impartiality. (*Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 170 [28 Cal.Rptr.2d 383].) On undisputed facts this is a question of law for independent appellate review. (*Id.* at p. 171.) The same standard of review should apply to clause A, the interests of justice exception.

■ Here the decision was based on rumors that the district attorney's office believed Judge Shabo was prejudiced against the People's interests in his interpretations of law, an accusation the judge believed untrue. (See also Code Civ. Proc., § 170.2, subd. (b) ["It shall *not* be grounds for disqualification that the judge: [¶] . . . [¶] (b) Has in any capacity expressed a view on a legal or factual issue presented in the proceeding" (italics added)].) We do not believe that a reasonable member of the public at large, knowing these "facts" (rumors), would on those facts alone reasonably entertain a doubt about Judge Shabo's impartiality, requiring his disqualification. Similarly, we do not see how these facts demonstrate that the interests of justice require his disqualification. ■ " 'Judicial responsibility does not require shrinking every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified.' " (*Flier v. Superior Court, supra,* 23 Cal.App.4th at p. 170, italics in original.) ■ We conclude Judge Shabo was not disqualified under either Code of Civil Procedure section 170.6 or section 170.1, subdivision (a)(6). He had the duty to sit because he was not disqualified. (Code Civ. Proc., § 170.)

## DISPOSITION

The order to show cause, having served its purpose, is discharged. Let a peremptory writ issue directing respondent court to vacate its order of October 24, 2000, granting the People's motion to disqualify Judge Shabo, and enter a new and different order denying the motion as untimely. The temporary stay order issued on December 5, 2000, is to remain in effect until the remittitur issues.

Epstein, J., and Hastings, J., concurred.