Filed 4/2/13  Petrossi v. Mikolich CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD PETROSSI,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>KELLY SPURLOCK MIKOLICH et al.,<br><br>     Defendants and Respondents. | F064854<br><br>(Super. Ct. No. 659547)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

Edward Petrossi, in pro. per., for Plaintiff and Appellant.

Susana Alcala Wood, City Attorney, and James F. Wilson, Deputy City Attorney, for Defendants and Respondents.

-ooOoo-

This is an appeal from a judgment for defendants and respondents, Kelly Mikolich and David Perine, entered after a jury returned a unanimous verdict in their favor in a personal injury action.  Plaintiff and appellant, Edward Petrossi, contends the trial court erred in admitting and excluding certain evidence and that the trial judge failed to

disclose that he was incapacitated by illness during the trial. There is no merit to plaintiff's contentions. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Plaintiff sued defendants for personal injury seeking compensatory and punitive damages. The matter went to trial on plaintiff's first amended complaint.

The evidence apparently credited by the jury disclosed that defendants, both Modesto police officers, were dispatched to an apartment building to investigate a report of a man sitting outside in his pajamas talking to himself. In response to questioning from Mikolich, plaintiff said he had stopped taking his medication and was contemplating harming himself. Mikolich handcuffed plaintiff and both officers helped plaintiff to his feet. They escorted him to Mikolich's patrol car. He got in the back seat and Mikolich fastened his seatbelt. She drove at normal speeds to a local mental health hospital, where she filled out the forms to admit plaintiff for a 72-hour evaluation. (See Welfare & Inst. Code, § 5150 et seq.) The hospital took custody of plaintiff and the officers returned to their normal duties about 40 minutes after the original dispatch.

Plaintiff testified he was sitting on the lawn meditating when the officers snuck up behind him. Without any conversation, they handcuffed him and placed him in Mikolich's patrol car, not fastening his seatbelt. Mikolich turned on her siren and drove fast and erratically, turning hard at various points so plaintiff was thrown around in the rear of the car. When she stopped in a parking lot, Perine opened the door and pulled plaintiff out by his feet. Perine used his foot to hold plaintiff's head to the pavement while two or three unknown persons kicked plaintiff to unconsciousness. Plaintiff drifted in and out of consciousness, but awoke to find himself confined at the mental hospital. He was released later that day. He testified he suffered bruising and permanent, disabling injury to his back and neck.

A nursing supervisor, relying on the medical records of the mental hospital, testified that plaintiff did not appear to be injured when admitted to the facility.

2.

The jury unanimously returned a special verdict determining that both defendants intentionally touched plaintiff and that neither defendant used unreasonable force in doing so. The court entered judgment for the defendants.

## DISCUSSION

Plaintiff presented several photographs as evidence of bruising on his arms and legs. During plaintiff's testimony establishing a foundation for the photographs, defendants' counsel objected that plaintiff's counsel was holding the photos so the jury could see them. The court sustained the objection and instructed counsel: "You cannot show them to the jury until they are in evidence. They're not in evidence at this point." After two more questions to plaintiff, counsel moved the exhibits into evidence, and they were received. From this brief episode, plaintiff concludes that the trial court "manipulated" the evidence to confuse the jury. Because of the "ping-pong effect" of the court's rulings, the "jury did not know to apply [that] photographic evidence during their deliberation period …." The court's rulings were not error. Only relevant evidence is admissible. (Evid. Code, § 350.) The court must make an initial determination whether evidence is relevant (*id*., § 210), based on its determination of preliminary facts (*id*., § 402), before ruling on admissibility, and until that point, unless the opposing party fails to object to the evidence, the jury is not permitted to hear, see, or consider the evidence. (*Id*., § 310, subd. (a) [court, not jury, determines preliminary facts for admissibility].) Plaintiff's counsel addressed the photographs in his argument to the jury: "Please look at these pictures carefully as they show parts of Mr. Petrossi's body, scratched and bruised." There is no indication in the record that anyone was confused about the photographs.

Plaintiff contends the court erred in admitting a police printout of the dispatch of the officers to the scene. Mikolich testified that the printout accurately reflected the information sent by the dispatcher to the officer's computer screen in her patrol car. Among other information on the printout was the statement that plaintiff was "SITTING AT STAIRWELL INFO OFFICE TALKING TO HIMSELF, HE IS POSS 5150, HAS

3.

BEEN LIKE THIS FOR THE PAST 7 DAYS."  Plaintiff contends that permitting this document into evidence was both evidence of the trial court's bias against him and was the reason the jury, which found the officers "intentionally touched" plaintiff, did not award damages for use of unreasonable force.  First, this argument wholly ignores the fact that the court redacted the exhibit, to remove the text, leaving primarily the computer-generated timeline for the dispatch (9:38 a.m.) and closing of the incident (10:15 a.m.).  The requirements for admitting the document into evidence as a business record were satisfied and all unduly prejudicial materials from the exhibit were redacted. The trial court did not err, and its actions do not in any way indicate bias against plaintiff. Further, there is no discrepancy between the jury's determination that the officers "intentionally touched" plaintiff, but did not use unreasonable force:  Both officers testified that after Mikolich handcuffed plaintiff, the officers helped him to his feet by holding his arms because, as Mikolich testified, "obviously that would be difficult for any person to try to stand up on their own with their hands behind their back …."  The jury credited this testimony but, as evidenced by the verdict, also credited the officers' testimony that they did not use any other force on plaintiff other than to handcuff him. This determination by the jury is well-supported by the evidence at trial and was not the result of the admission of the limited portions of the computer printout.

Plaintiff also contends the trial judge was suffering from a cold during the trial and that if the court had "disclosed" this to plaintiff, he might have sought to disqualify the judge under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii).[1]  At the very outset of the trial, the court apologized to the jury, stating that he was "sucking on a cough drop because … I have had a little problem with coughing."  At the end of the second day of trial, the court told the jury that the court would recess until the next day

---

[1]     Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), provides:  "[A judge shall be disqualified if] [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

"at 9:00 o'clock." After other remarks, the court continued: "So have a good evening…. And please be on time, 9:30, so we can get going by the way." Counsel asked for clarification. The court acknowledged its error, and then made a small joke: "I guess this cold got to me a little further. Wrecking my clock." The court said it meant to bring counsel back at 9:00 a.m. and the jury at 9:30 a.m. Based on this, plaintiff argues that the trial judge should have told plaintiff about his "medical condition" so plaintiff could disqualify the judge "on reasons of inability to focus and lack of capacity of recognition thereto" because these conditions permitted the defendants to "manipulate[] the court to make errors" in ruling on the evidence.

Disqualification under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii) involves an objective test, namely, whether a reasonable member of the public at large, aware of all the facts, would fairly entertain doubts concerning the judge's impartiality. (*Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319.) "[T]he litigants' necessarily partisan views [do] not provide the applicable frame of reference." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104.) When the issue of impartiality arises after proceedings in a matter have begun (and here the issue is raised only after judgment has been entered), the judge's conduct of the trial "must be considered as evidence of his impartiality" or bias. (*Id*. at p. 106, fn. omitted.) Further, where the judge is not the finder of fact, "the need for disqualification decreases by the extent to which the judge's rulings in the case are limited to purely legal matters," since such rulings are in any case "subject to plenary appellate review." (*Id*. at pp. 104-105.) Where the facts are undisputed, we review the issue de novo as a question of law. (*Briggs v. Superior Court, supra,* 87 Cal.App.4th at p. 319.)

On the record before us, Judge Mayhew conducted the trial with impeccable impartiality. The sole instance of "lack of capacity" cited by plaintiff constituted a trivial statement to the jury that it should return at 9:00 a.m., when the court meant for the lawyers to return at that time and the jury to return half an hour later. Judge Mayhew

corrected himself in a good natured way wholly appropriate to the circumstances. We have reviewed the transcript of the trial, including the judge's reference to the fact that he had a common cold, and find nothing that, to a reasonable member of the public, would begin to raise doubts concerning Judge Mayhew's impartiality.

## *DISPOSITION*

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


_____
HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
GOMES, J.