Filed 3/14/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BASSETT UNIFIED SCHOOL DISTRICT, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> MICHAEL ROSS, <br><br> Real Party in Interest. | B323528 <br><br> (Los Angeles County Super. Ct. No. 19STCV22820) |

ORIGINAL PROCEEDING; petition for writ of mandate. Superior Court of Los Angeles Court, Stephanie M. Bowick, Judge. Maria D. Hernandez, Judge, Orange County Superior Court. (Judge of the Sup. Ct. for the L.A. Jud. Dist. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Petition denied.

Olivarez Madruga Law Organization, Thomas M. Madruga, Deborah Lee-Germain; Greines, Martin, Stein & Richland, Robert A. Olson and Edward L. Xanders for Petitioner.

No appearance by Respondent.

Alexander Morrison + Fehr, Tracy L. Fehr; Ivie McNeill Wyatt Purcell & Diggs, Rodney S. Diggs; Engelman Law and Britany M. Engelman for Real Party in Interest.

_____

## *INTRODUCTION*

This writ proceeding involves a statutory challenge for cause filed against a trial court judge presiding over a wrongful termination lawsuit. The parties are plaintiff Michael Ross and his former employer, defendant Bassett Unified School District.[1]

Following a multimillion dollar jury verdict in favor of Ross, the trial judge in this action, Honorable Stephanie Bowick, received a text message from another judge on the court, Honorable Rupert Byrdsong. According to Judge Bowick, "I received a text message from Judge Byrdsong on my cellphone that stated, quote, '$25 Million!! [Confetti emoji], [confetti emoji].'[2] I did not respond to the text message." Judge Byrdsong had previously informed Judge Bowick that attorneys from his former firm were trying the case. On one occasion he had greeted Ross's counsel in Judge Bowick's courtroom during a break in the proceedings and later brought Judge Bowick a food item. On another, Judge Byrdsong had briefly observed, from the audience,

_____

[1] An individual employee of the school district was also named as a defendant, but he is not a party to this writ proceeding.

[2] We have added the brackets. The record does not contain the text message, but we assume it included actual confetti emojis, and not the words "confetti emoji."

2

the jury selection in Judge Bowick's courtroom, until Judge Bowick had a note passed to him asking him to leave.

Upon receipt of the postverdict text message, Judge Bowick disclosed to the parties the entire course of events involving Judge Byrdsong. Pointing to Judge Byrdsong's apparent support for Ross and the resulting verdict in Ross's favor, the school district sought Judge Bowick's disqualification, asserting that a " 'person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial' " (Code Civ. Proc., § 170.1, subd (a)(6)(A)(iii)). The disqualification motion was assigned to Orange County Superior Court Judge Maria D. Hernandez. (See Code Civ. Proc., § 170.3, subd. (c)(5).) In a 10-page order, the assigned judge denied the disqualification motion.

Defendant sought review by petition for writ of mandate. We issued an order to show cause, and now deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Two Lawsuits Between the Parties*

This is the second of two lawsuits between the parties. In the first action, Ross sued the school district for, among other things, racial discrimination. (*Ross v. Bassett Unified School District* (Super. Ct. L.A. County, 2017, No. BC614556).) That case settled. Ross then filed the present action, claiming that the school district had fired him in retaliation for filing the first lawsuit.

### 2. *Relevant Proceedings and Judge Byrdsong's Involvement*

The complaint in the current action was filed on June 28, 2019. The matter was assigned to Judge Bowick. Jury selection began on July 6, 2022, but it was Judge Bowick's ruling on a pretrial motion that would underlie the school district's eventual

3

disqualification motion.[3]  By motion in limine, the school district sought an order limiting plaintiff's use of allegations of racial discrimination he had made in his prior, settled, lawsuit.  The motion was formally addressed by the court at a hearing on June 27, 2022, before the jury was impaneled.  The subject was then considered at several more hearings, with the court's final ruling coming on July 8, 2022.  By its final ruling, the court allowed Ross to introduce evidence of several instances of claimed racial discrimination on which the first lawsuit was based.  Trial proceeded and on July 22, 2022, the jury rendered a verdict in favor of Ross in the amount of $24,584,449.

On July 29, 2022, the court conducted a posttrial conference with counsel in which she disclosed several contacts she had had with Judge Byrdsong during and after the trial.  The reporter's transcript of the conference is part of the record in this writ proceeding.  On August 8, 2022, the school district filed its disqualification motion based on Judge Byrdsong's contacts with Judge Bowick.

Because Judge Byrdsong's connection with the trial court proceedings is at the heart of the school district's motion, we provide a chronology of key events:

**June 27, 2022** – The school district had filed a written motion in limine that is not part of the record in the current writ proceeding.  The motion sought to limit how Ross could use the first discrimination lawsuit as evidence in the present action.  At a pretrial hearing, the school district agreed that Ross could refer to the prior racial discrimination lawsuit, but argued that he should

---

[3]     Technically, the school district sought disqualification by means of a "Statement of Disqualification," not a motion.  For ease of reference, we refer to it as a "motion."

4

be precluded from getting into the details of the allegations. Judge Bowick pointed out that the school district's moving papers had been more extreme, seeking a ruling in limine precluding Ross from " 'making any mention of the filing.' " Judge Bowick denied this motion as overbroad, but directed Ross to inform her of exactly what parts of the prior lawsuit he was planning to introduce. She also stated that the school district could submit a proposed limiting instruction to the jury.

At the end of the workday, Judge Bowick saw Judge Byrdsong when she was leaving the building, and they exited the courthouse together. Judge Byrdsong "commented that he had noticed lawyers from his old firm in [her] courtroom." According to Judge Bowick, they "did not speak any further about that observation or about the case."

**July 5, 2022** – At an additional pretrial conference, Judge Bowick asked Ross's attorney what details from the prior lawsuit he intended to introduce at trial. After further discussion, Judge Bowick indicated that the jury could be informed of the allegations only in a general sense, stating only the names of the defendants and the causes of action alleged; but she couched her language in the form of a tentative ruling. (E.g., "And so at least right now my belief is that . . . ." "Perhaps you can find some authority for me between now and opening statement . . . ." "For now I'm going to say . . . .")

**July 6, 2022** – Two things occurred on this date, but nothing in the record confirms the chronological order of events. Our record does not contain the reporter's transcript from July 6, but the transcript for July 7 documents that on the previous day there had been further discussion of the evidentiary issue. On July 7, the trial court stated, "There had been some discussions yesterday

5

about the court revising [its] ruling just a bit with respect to the scope of discussions plaintiff would be allowed to discuss with the jury and present evidence on with respect to the [prior] lawsuit. [¶] The court had indicated, after further consideration of the arguments of the parties, that the court would allow plaintiff to give a brief explanation of the claims in that 2016 lawsuit and not be limited to the names of the parties and the causes of action only, and we had had a discussion about that."

Also on July 6 – although with nothing in the record as to whether it occurred before or after Judge Bowick indicated she would revise her ruling – Judge Byrdsong entered the courtroom during a break in jury selection. He briefly spoke with Ross's attorneys. Although Judge Bowick saw Judge Byrdsong in the courtroom, she did not hear the conversation, and Judge Byrdsong left before jury selection resumed. Later that same day, while proceedings were in session, Judge Byrdsong entered the courtroom again and told Judge Bowick's judicial assistant that he had "a food item" for Judge Bowick. He later returned "to deliver a small container of food which he handed to [her] judicial assistant."[4]

**July 7, 2022** – Before resuming jury selection, Judge Bowick reminded counsel that, in discussions the previous day, she had indicated an intent to allow Ross to discuss more of the prior

---

[4] The school district would later assert that, when Judge Byrdsong returned with the food, Judge Bowick "invited him back to chambers," although he "was not there long." In her ruling on the disqualification motion, Judge Hernandez impliedly found that Judge Byrdsong did not enter chambers, based on Judge Bowick's recollection and her statement that she would have disclosed to counsel if Judge Byrdsong had been in chambers. As we shall discuss, substantial evidence supports this implied finding.

6

lawsuit. She asked Ross's counsel to put on the record what he wanted to place before the jury. When Ross's counsel went into great detail, Judge Bowick stated, "I will say yesterday, when the court indicated it was willing to – or [found] it was appropriate to allow the plaintiff to expand a bit on the nature of the claims the court was inclined to, perhaps, have plaintiff give more summaries of what happened in terms of the types of incidents without going into the details of it, although I'm happy to consider [plaintiff's counsel's] argument this morning." As the argument progressed, it appeared that some of the incidents of racial discrimination were mentioned in the school district's "charging packet" that provided the basis for the district's termination of Ross. Argument was then suspended for jury selection.

During voir dire, Judge Bowick "noticed Judge Byrdsong sitting in the audience." Through her judicial assistant, Judge Bowick passed a note to Judge Byrdsong, asking him to leave the courtroom, which he did immediately. She later "confirmed with Judge Byrdsong that he would not attend any further proceedings in the action." According to Judge Bowick, Judge Byrdsong "did not return to the courtroom after July 7, 2022." There is no evidence to the contrary.

Following jury selection, Judge Bowick returned to the unresolved evidentiary issue. The school district's counsel agreed that "the references that the [school district] has put in its charging packet are fair [game]." At that point, Judge Bowick asked for, and received, copies of the charging packet, the underlying complaint, and the termination letter. She expressed some frustration that the parties had not previously provided this documentation, and indicated that she needed to review it to determine what information the school district had considered as

7

part of its termination decision. She promised a ruling in the morning.

**July 8, 2022** – Having completed her review of the documents, Judge Bowick informed the parties of her ruling. Rather than limiting Ross to the names of the causes of action and defendants in his prior complaint, she would allow him to give a general explanation of each cause of action and identify 10 specific examples of conduct alleged in that action. Judge Bowick reminded the school district's counsel that it could still draft a special instruction for the jury that explained none of these allegations had been proven.

**July 22, 2022** – Following a two-week trial, on Friday, July 22, 2022, the jury returned a verdict in favor of Ross and against the school district in an amount exceeding $24.5 million.

**July 24, 2022** – On the evening of Sunday, July 24, 2022, Judge Byrdsong sent Judge Bowick a text message, reading, "$25 Million!!" followed by two confetti emojis. Judge Bowick did not respond to the text message.

**3.** ***Judge Bowick's On-the-record Disclosures to Counsel***

On July 25, 2022, Judge Bowick asked Judge Byrdsong to not have any further contact or communications with her about the case; he agreed.[5] Judge Bowick consulted a member of the "California Judicial Ethics Committee" and Court Counsel.[6] On

---

[5]     The record does not reflect whether Judges Byrdsong and Bowick talked to each other or whether the communication was by email or text.

[6]     The record does not indicate whether Judge Bowick contacted the California Judges Association Judicial Ethics Committee or the California Supreme Court's Committee on Judicial Ethics Opinions. Both provide ethics advice to judges.

July 26, 2022, she scheduled a posttrial conference in order to disclose certain events to the parties.  The conference took place on July 29, 2022.  All counsel were present.

At the posttrial conference, Judge Bowick made the following disclosure:

"On July 26, 2022, I scheduled this posttrial conference to provide a disclosure to the parties regarding recent events related to this case.  Specifically, a text message I received from Los Angeles Superior Court Judge Rupert Byrdsong on the evening of Sunday, July 24, 2022.

"I will also disclose encounters with Judge Byrdsong pr[e]ceeding the July 24, 2022, communication which occurred prior to and during the pendency of trial in this matter.  I am aware that Judge Byrdsong was previously a partner with the law firm of Ivie McNeill Wyatt Purcell & Diggs, counsel for plaintiff, prior to his appointment to the bench in 2014.  Presently, Judge Byrdsong sits down the hall on the third floor in Department 28 of the Stanley Mosk Courthouse.  On or about June 27, 2022, at the end of the workday, I saw Judge Byrdsong on my way out of the building and we exited the courthouse together.  He commented that he had noticed lawyers from his old firm in my courtroom.  We did not speak any further about that observation or about the case.  On July 6, 2022, during a break from jury selection proceedings, I observed Judge Byrdsong enter the courtroom while I was on the bench, and he proceeded to have a brief conversation with counsel and legal assistants for plaintiff at counsel[']s table.  I could not hear the conversation, but I recall that he left the courtroom before the break ended and jury selection resumed.  I recall that one or more members of defendant's trial team was also present in the courtroom during this encounter.  Later that same day, Judge

9

Byrdsong entered the courtroom while proceedings were in session and passed along a message to me through my judicial assistant offering me a food item. A short time later, while proceedings were in session, Judge Byrdsong entered the courtroom again to deliver a small container of food which he handed to my judicial assistant.

"On July 7th, 2022, we resumed jury selection in the morning. When I noticed Judge Byrdsong sitting in the audience, I passed a note through my judicial assistant asking him to leave the courtroom, which Judge Byrdsong did immediately. I subsequently confirmed with Judge Byrdsong that he would not attend any further proceedings in this action. Judge Byrdsong was not wearing a judicial robe on any occasion in which he visited the courtroom. He did not return to the courtroom after July 7, 2022.

"On Friday, July 22, 2022, the jury returned a $25 million verdict in favor of [Ross] in this action. On the evening on Sunday July 24, 2022, I received a text message from Judge Byrdsong on my cellphone that stated, quote, '$25 Million!! [Confetti emoji], [confetti emoji].' I did not respond to the text message. On Monday, July 25, 2022, I asked Judge Byrdsong to not have any further contact or communication with me about the case. Judge Byrdsong agreed.

"As of this date, I have had no further communications with Judge Byrdsong and do not intend to have any future communications with him regarding this case. Judge Byrdsong and I have never had any discussions about any parties, facts, or legal issues relating to this case, its merits or rulings that I have made or will make in the future. I have not had any communications or interactions with Judge Byrdsong about this case whatsoever, except for those communications and interactions which I have disclosed today. None of the facts disclosed above

have had in the past, nor will have in the future, any effect on my ability to be fair and impartial in presiding over this case.

"I am disclosing the text message because I believe that it is appropriate to do so. I am further disclosing the other communications in an excess of caution due to the cumulative nature of each interaction and communication in connection with the text message. I do not recuse myself from presiding over this case or handling of any future proceedings because I believe there is no basis to do so. I have conducted a fair trial and hearings in this matter and I will continue to be fair and impartial to all parties involved without bias or prejudice."

At this point in the conference, one of the school district's lawyers stated that "this is obviously news to the defense," and that he and his client would need to evaluate the disclosure. One of Ross's attorneys volunteered that he was unaware of the text message. He added, "Obviously, all counsel was there when Judge Byrdsong came in the court, but there was no conversations that was had with Mr. Byrdsong other than the pleasantries, 'Hello,' and at no time during the trial did plaintiff or anyone on plaintiff's team have any communication with Judge Byrdson[g] about the case, regarding the case, any updates about the case, and that was it."

### 4.      *The School District's Disqualification Motion*

On August 5, 2022, the school district moved to disqualify Judge Bowick on the basis that a person aware of the facts would reasonably entertain a doubt that she would be able to be impartial. (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).) The district argued that Judge Byrdsong was undoubtedly expressing support for Ross, and this could not have escaped Judge Bowick. Although the verdict had been received, there were still posttrial

11

motions to be heard. The school district took the position that a reasonable layperson would doubt Judge Bowick's impartiality in ruling on those motions, given her receipt of Judge Byrdsong's text message.

The motion relied on Judge Bowick's disclosure and on a "verified statement" from the school district's lawyers. The verified statement was in unusual form in that it was a single statement, with verifications by two different attorneys and a paralegal, with little indication as to which portions of the statement were verified by which individuals.[7] The statement represented that, when Judge Byrdsong greeted Ross's counsel, "[t]here were handshakes, hugs, and high fives . . . ." The statement also represented that, on July 6, when Judge Byrdsong brought food for Judge Bowick, Judge Bowick invited Judge Byrdsong into her chambers. It claimed that, "[o]n July 7, 2022, the day after Judge Byrdsong went back into chambers with Judge Bowick, Judge Bowick

---

[7] For example, the verified statement asserts that "Judge [Bowick]'s revelations triggered the following remembrance from defense counsel. When Judge Byrdsong appeared with food for Judge Bowick, she invited him back to chambers on one occasion and addressed him as 'judge.' All three of the below declarants saw Judge Byrdsong go into chambers." While the statement is clear that "all three" declarants assert they saw Judge Byrdsong go into chambers, it does not indicate which declarant had the "remembrance" that Judge Bowick invited Judge Byrdsong into chambers and called him "Judge." Later in the same combined verified statement, the attorneys assert that one of their number, Attorney Deborah Lee-Germain, did not know Judge Byrdsong was a judicial officer at the time he emerged from Judge Bowick's chambers – a statement which does not easily co-exist with counsel hearing Judge Bowick call Judge Byrdsong "Judge" when inviting him into chambers.

changed her prior ruling and allowed in evidence as to the specific allegations of race discrimination from the prior lawsuit . . . ." While the school district did not claim that Judge Bowick was actually biased in this case, it took the position that a person would reasonably entertain a doubt about Judge Bowick's impartiality given (among the other facts) her "change of a critical ruling after meeting with [Judge Byrdsong] in chambers."

**5.    *Judge Bowick's Answer***

Judge Bowick responded with a verified answer confirming the truth of her previous disclosure.  She challenged several of the representations of defense counsel, specifically stating that Judge Byrdsong was never invited into chambers.  She stated, "I do not recall any point during the pendency of trial in this matter in which Judge Byrdsong joined me in chambers, and I would have disclosed such an event had it occurred.  I also asked my Judicial Assistant whether he recalled such an event and confirmed that he did not."

Court counsel filed points and authorities opposing disqualification, adding to the record the procedural history of Judge Bowick's ruling on the pretrial evidentiary issue that we have detailed above.

**6.    *The Denial of the Motion by Judge Hernandez***

On August 23, 2022, the Judicial Council assigned Judge Hernandez from the Orange County Superior Court to rule on the disqualification motion.

On September 15, 2022, Judge Hernandez issued a written order.  First, she deemed it unnecessary to hold a formal hearing and resolved the matter on the briefs and evidence submitted.  Then, she denied the motion, concluding that the school district had failed to meet its burden to establish a person aware of the

13

facts would reasonably entertain a doubt as to Judge Bowick's ability to remain impartial.

As to whether Judge Bowick changed her pretrial ruling on the evidentiary issue following an in-chambers meeting with Judge Byrdsong, Judge Hernandez concluded this was unsupported by the evidence, explaining as follows: "Based on the assertion that Judge Byrdsong had gone into chambers, the [school district] speculates that Judge Bowick changed her ruling on admissibility of the allegations of the prior suit based on her interaction with Judge Byrdsong. This speculates about Judge Bowick's veracity and motivations for her rulings, and provides no facts establishing grounds for disqualification. There is conflicting evidence whether Judge Byrdsong even went into chambers. [Citations.] Judge Bowick declares she would have disclosed it had it occurred. [Citation.] Judge Bowick denied that she discussed the merits of the case with Judge [Byrdsong.] [Citation.] She disclosed that Judge Byrdsong had told her that he had noticed lawyers from his former firm was appearing before her. [Citation.] She disclosed she sent a note to Judge Byrdsong telling him not to observe the proceedings. [Citation.] She disclosed it when she received the '$25 million' text from Judge Byrdsong. [Citation.] Judge Bowick's disclosures, and the absence of any disclosures about any other communications, along with her statement that she did not discuss the merits, are compelling evidence that no discussions of the merits took place."

Judge Hernandez concluded, based on Judge Bowick's statements in the record, that Judge Bowick changed her ruling on the admissibility of the allegations in the prior lawsuit "based on her understanding of the facts and law."

14

**7.** ***Writ Proceedings***

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d).) On September 28, 2022, the school district filed a petition for writ of mandate challenging Judge Hernandez's order denying disqualification. The school district sought an immediate stay of postverdict proceedings in the trial court.

We issued the stay and, following receipt of a preliminary opposition and reply, issued an order to show cause. Ross filed a return to the order to show cause, and the school district filed a reply.

## DISCUSSION

**1.** ***Preliminary Matter***

Both parties include in their briefing facts that are not in the record. For example, the school district asserts that, at the time of its petition, Judge Byrdsong was "the current President of the California Judges Association and an advisory member of the Judicial Council." Ross replies that Judge Byrdsong's term ended prior to the filing of the writ petition. While it appears undisputed that Judge Byrdsong is a prior President of the California Judges Association, neither this fact, nor whether Judge Bowick was aware of his position, was before the court in the disqualification motion. For his part, Ross (through his counsel's verification) makes a number of factual assertions regarding whether the specific attorneys representing him in this matter overlapped with Judge Byrdsong at the law firm. He denies that there were any hugs or high fives when Judge Byrdsong greeted his counsel; claiming only a brief and mundane greeting. He also states, with

15

no evidentiary support, that "Judge Byrdsong is known to visit other courtrooms in the courthouse to observe trials." None of these purported facts were before the trial court. We do not consider facts asserted for the first time in this court. (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 389 (*Wechsler*).)

## 2. *Governing Authority and Standard of Review*

Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii) provides that a judge shall be disqualified if, "[f]or any reason: [¶] [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." This standard is " 'fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable [person] would entertain doubts concerning the judge's impartiality, disqualification is mandated. "To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person." [Citations.] While this objective standard clearly indicates that the decision on disqualification not be based on the judge's personal view of his own impartiality, it also suggests that the litigants' necessarily partisan views not provide the applicable frame of reference. [Citations.] Rather, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." ' " (*Jolie v. Superior Court of Los Angeles County* (2021) 66 Cal.App.5th 1025, 1039-1040.)

" ' "The 'reasonable person' is not someone who is 'hypersensitive or unduly suspicious,' but rather is a 'well-

informed, thoughtful observer.' " [Citation.] "[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard." ' [Citations.] Moreover, the reasonable person must be viewed from the perspective of the reasonable layperson, 'someone outside the judicial system,' because 'judicial insiders, "accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." ' " (*Wechsler, supra,* 224 Cal.App.4th at p. 391.)[8]

A party asserting disqualification has a "heavy burden" and "must ' "clearly" ' establish the appearance of bias." (*Wechsler, supra,* 224 Cal.App.4th at p. 391.) We expect our judges to be made of strong stuff and "the appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." ' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 389; cf. *Craig v. Harney* (1947) 331 U.S. 367, 376 ["Judges are supposed to be men [and women] of fortitude, able to thrive in a hardy climate."].) Stated more viscerally, " 'Judicial responsibility does not require

---

[8] In their statement in support of disqualification, the school district's counsel suggested that the standard was violated because, "counsel could not look their clients in the eye and tell them that there was no doubt that Judge Bowick was not even implicitly or subconsciously influenced by her fellow jurist's clear adoption of and support of one side of the case." But, the partisan attorney or litigant is not the disinterested objective observer described in the authorities we have cited.

17

shrinking every time an advocate asserts the objective and fair judge appears to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified.' " (*Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 170 (*Flier*); see also Code Civ. Proc., § 170.)

When the facts are not in dispute, the issue of how an objective person would view the judge's ability to be impartial is a legal question we review de novo. (*Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319; *Flier, supra,* 23 Cal.App.4th at p. 171.) When the facts are disputed, we review for substantial evidence the factual findings of the court ruling on the disqualification motion. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 106 ["We are, of course, bound by the [judge ruling on the disqualification motion]'s factual findings. . . ."]; see also *Alper v. Rotella* (2021) 63 Cal.App.5th 1142 [applying substantial evidence review to factual findings on motion to vacate arbitration for arbitrator's disqualification]; cf. *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1262-1263 [substantial evidence review for factual findings regarding motion to disqualify counsel].)

3.     ***The Disqualification Motion Was Properly Denied***

     *a.     There Is No Adverse Inference Arising From Judge Bowick's Final Ruling on the Evidentiary Issue*

Before turning to the interactions with Judge Byrdsong that Judge Bowick addressed in her disclosure, we first consider the school district's argument that a reasonable observer would doubt Judge Bowick's objectivity because she changed her ruling on the evidentiary issue after meeting with Judge Byrdsong privately in her chambers.

Whether Judge Bowick met with Judge Byrdsong in her chambers was a disputed issue, one which Judge Hernandez

impliedly resolved against the existence of a meeting.[9]  This conclusion is supported by substantial evidence – specifically, Judge Bowick's statement that Judge Byrdsong did not go into her chambers and she would have disclosed it if he had.  While the school district's statement suggests that both attorneys and the paralegal who submitted verifications saw Judge Byrdsong go into chambers, the statement contains internal inconsistencies (regarding, for example, when each realized Judge Byrdsong was a judge), and Judge Hernandez could reasonably have found that the absence of individual declarations documenting individual recollections rendered the group declaration less worthy of belief.

The school district downplays the factual dispute regarding whether Judge Byrdsong went into Judge Bowick's chambers, arguing that it is a "minor, immaterial detail."  We do not quite understand the argument.  We assume the point was important because the school district raised it in its briefing.  The school district's contention appears to be that Judge Byrdsong was invited into chambers with Judge Bowick and, to a reasonable observer, the inference is that Judge Bowick changed her ruling because of what took place behind closed doors.  The school district argued

---

[9]     Judge Hernandez acknowledged the factual dispute but did not by express words find that Judge Byrdsong did not go into chambers.  Judge Hernandez stated that Judge Bowick represented that she would have disclosed a chambers meeting if it had occurred, and then Judge Hernandez held that Judge Bowick's "disclosures, and the absence of any disclosures about any other communications, along with her statement that she did not discuss the merits, are compelling evidence that no discussions of the merits took place."  Implicit in these findings is that Judge Bowick's representation that Judge Byrdsong did not go into chambers was credible and persuasive.

that Judge Bowick "change[d] a critical ruling after meeting with [Judge Byrdsong] in chambers." Although a meeting in chambers would be a relevant, nondispositive fact, if true, we conclude substantial evidence supports Judge Hernandez's implied finding that there was no meeting.

As to the school district's point that Judge Byrdsong's conduct in general influenced Judge Bowick to change her ruling in Ross's favor, Judge Hernandez expressly found that Judge Bowick's ruling was based on her view of the law and facts. Substantial evidence supports the finding. To recap our previous chronology: On July 5, Judge Bowick indicated a tentative, narrow ruling.[10] On July 6, she was already suggesting that she would broaden it. On July 7, Ross argued for an even broader interpretation, and the parties finally provided Judge Bowick with the relevant documents. On July 8, after reviewing the documents, Judge Bowick issued a final, broader ruling.[11]

Substantial evidence supports Judge Hernandez's ruling that Judge Bowick's evolving thought process was not influenced

---

[10]     We observe that this initial ruling on the motion in limine – which the school district found favorable – came after Judge Byrdsong told Judge Bowick as they walked out of the courthouse that members of his prior firm were appearing before her.

[11]     We pause to point out that there is nothing intrinsically suspicious about a judge changing her ruling on a motion in limine. "[I]n limine rulings are not binding because the trial court has the power to reconsider, modify or set aside its order at any time prior to the submission of the cause." (*People v. Yarbrough* (1991) 227 Cal.App.3d 1650, 1655; see also *People v. Turner* (1990) 50 Cal.3d 668, 708; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 90, fn. 6.)

20

by Judge Byrdsong's greeting of Ross's counsel, the provision of a food item on July 6, and by his brief appearance in the audience section of her courtroom on July 7 (when she had her judicial assistant pass him a note asking him to leave).

The school district argues that it is a "critical, undisputed" fact that "between July 6, when Judge Byrdsong first appeared in the courtroom clearly affiliated with one side, and July 8, the trial court—in the words of Judge Bowick's own minute order—'revise[d] its previous ruling . . .'." But this unpersuasive cause-and-effect analysis is both speculative and based on an oversimplification of the proceedings painted with a cherry-picked timeline. As the record is not clear when Judge Byrdsong came into Judge Bowick's courtroom on July 6, it may be that Judge Bowick indicated her intention to change her ruling *before* Judge Byrdsong "first appeared in the courtroom." In any event, Judge Hernandez rejected the idea that Judge Bowick's evidentiary ruling was influenced by Judge Byrdsong. The defense argument, she wrote, "speculates that Judge Bowick changed her ruling on admissibility of the allegations of the prior suit based on her interaction with Judge Byrdsong. This speculates about Judge Bowick's veracity and motivations for her rulings, and provides no facts establishing grounds for disqualification." Judge Hernandez concluded that Judge Bowick's change from her earlier tentative ruling was the product of her evaluation of the law and facts, not the result of Judge Byrdsong's presence. This factual finding is supported by substantial evidence. We conclude that no disinterested observer would reasonably question Judge Bowick's impartiality because of any change in her ruling.

21

b.  *The Facts Judge Bowick Disclosed Do Not Require Disqualification*

Stripped of any adverse inferences arising from the timing of Judge Bowick's pretrial ruling on a substantively important, but procedurally routine, evidentiary issue, we are left with a final discrete issue:  would the facts disclosed by Judge Bowick lead a well-informed, thoughtful and reasonable observer to entertain a doubt about Judge Bowick's impartiality?

Although the record covers several days of pretrial and postverdict events, the relevant facts involve little that Judge Bowick did or said.  We ask:  Whether an objective person would reasonably entertain a doubt about *Judge Bowick's* impartiality because of *Judge Byrdsong's* actions.

We review briefly again Judge Byrdsong's actions as revealed by the record before us:  (1) On the way out of the courthouse, he told Judge Bowick that some members from his former firm were trying the case.  (Judge Bowick said nothing.)  (2) During a break in proceedings, he entered Judge Bowick's courtroom and greeted Ross's counsel.  (3) Through messages conveyed by way of Judge Bowick's judicial assistant, he offered her food and later delivered it.  (4) Judge Byrdsong briefly sat in the audience during jury selection, until Judge Bowick (through her judicial assistant) asked him to leave.  (5) After the verdict, Judge Byrdsong sent Judge Bowick the text message.

As to Judge Byrdsong's comment to Judge Bowick as they left the courthouse on June 27, school district counsel conceded at oral argument that sort of remark was not inappropriate.  There is no evidence it had any effect on Judge Bowick.  We agree with Judge Hernandez's conclusion that, "A brief encounter with a judicial colleague who years earlier had worked with plaintiffs' law

22

firm and knew and was friendly with the attorneys on the case forms no basis for Judge Bowick's disqualification."

As for Judge Byrdsong sitting in the audience, the school district suggests that Judge Bowick "knew that Judge Byrdsong's presence in the courtroom in support of one side of the case was wrong. That is why she asked him, after he appeared on a second day, to depart." Judge Bowick's response to seeing Judge Byrdsong in her courtroom does not suggest her impartiality was negatively impacted. As Judge Hernandez reasonably found, it suggests that, if Judge Bowick perceived that Judge Byrdsong was intent on influencing her, she would have nothing of it. She asked him to leave and he left. An objective person apprised of these facts would have no reason to doubt Judge Bowick's impartiality.

We accept for our analysis the school district's contention that an objective observer would understand the text message to reflect that Judge Byrdsong was pleased about the verdict the jury rendered for Ross; indeed, even court counsel in responding to the motion referred to the text as "celebratory." But receipt of an emoji-laden text suggests nothing about Judge Bowick's ability to be fair and impartial or a reasonable person's assessment of the situation. What Judge Bowick did in response to the text was what a reasonable person would expect her to do in discharging her own ethical obligations – she directed Judge Byrdsong to have no further contact or communications with her regarding the case, and promptly disclosed the text, which was an ex parte communication to her, to the parties. (See Cal. Code of Jud. Ethics, canons 3B(7)(d), 3E(2)(a).)[12]

_____

[12] California Code of Judicial Ethics, canon 3B(7)(d) provides: "If a judge receives an unauthorized ex parte communication, the

23

In short, we agree with Judge Hernandez that nothing in the events would suggest to an objective observer a doubt that Judge Bowick was impartial.[13]

### c. Case Authority, Although Limited, Generally Is In Accord

The parties have submitted, and independent research has disclosed, little California authority on the precise issue of whether the trial judge's knowledge of another judge's bias in favor of a party's counsel can reasonably be perceived as creating a doubt as to the trial judge's ability to remain impartial. *People v. Panah* (2005) 35 Cal.4th 395 appears to be the closest California authority. The case involved a death penalty prosecution arising out of the brutal murder of a child. The victim's mother was a paralegal or legal secretary, her fiancé was a criminal defense attorney. The defendant did not argue that the individual judge trying the case was biased against him. "Defense counsel's

---

judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond."

California Code of Judicial Ethics, canon 3E(2)(a) provides: "A judge shall disclose information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification."

[13] In its writ petition, the school district tries to bolster its case for presuming bias by adding arguments that Judge Byrdsong is "influential" and a "close" colleague of Judge Bowick. As we have discussed, the argument that Judge Byrdsong is "influential" relies on facts not introduced before the trial court, and we therefore disregard it. If we were to assume that the two judges were "close colleagues," our analysis would be the same.

24

declaration in support of the disqualification motion made it clear that he was not asserting that the trial court was personally biased against him but, rather, that an institutional bias against him pervaded the Van Nuys courthouse because of the 'unusual relationship between the Van Nuys court system and the family of the deceased in this case.' " (*Id.* at p. 445.)  The defendant relied on several incidents, including:  the victim's mother held a private conference with a different judge in his adjacent courtroom; graffiti on a railing outside the courtroom advocated the defendant's death; and a bailiff transporting prisoners to the courtroom suggested that the defendant should kill himself.  (*Id.* at p. 445.) Our Supreme Court concluded the challenge was procedurally defective but also substantively meritless, stating, "Defendant asserts that an institutional bias on the part of other judges or courthouse personnel is sufficient to disqualify a judge as to whose impartiality no question exists.  We are far from persuaded the allegations in defense counsel's declaration demonstrated a pervasive institutional bias against defendant but, in any event, nothing in the disqualification statute supports his argument." (*Id.* at pp. 446-447.)[14]

We find analogous, although not directly on point, some out of state authority that a judge is not biased, nor would a reasonable person believe otherwise, simply because the judge – by no action of his or her own – receives a biased ex parte communication from a third party about the pending matter.  In *Jackson v. State* (Miss.Ct.App. 2007) 962 So.2d 649, during the

---

[14]	We recognize that the present case does not directly involve institutional bias by all judges, but in light of the school district's argument about the effect of Judge Byrdsong's actions on Judge Bowick, we find the Supreme Court's observations pertinent.

25

course of the proceedings, an unidentified attorney sent the trial judge a fax, claiming that the defendant's attorney attempted to bribe a police informant in exchange for perjured testimony. (*Id.* at p. 663.) The trial court indicated that it would not consider the fax or investigate the claims made therein. The defendant argued that the court should have recused itself because the information in the fax, whether true or not, made it impossible for the judge to maintain impartiality. (*Ibid*.) The appellate court disagreed, concluding, "[Defendant] only speculates that [the trial judge] could not have been impartial, but there is nothing among the record that suggests [the trial judge] was or could have been viewed as partial to the prosecution. Mere speculation is insufficient to raise reasonable doubt as to the validity of the presumption that the trial judge was qualified and unbiased." (*Ibid*.; see also *Bailer v. Com.* (Ky. 2012) 2012 WL 601264 [trial judge not biased because one of the witnesses was another judge on the court who had heard threats to witnesses in previous proceeding];[15] *Mungin v. State* (Fla. 2006) 932 So.2d 986, 994 [no requirement that a trial judge recuse simply because a fellow judge is a witness].)

We are equally persuaded that the receipt by a trial judge of an apparently celebratory text that is disclosed promptly to the parties shows neither bias nor an appearance of bias, particularly

---

[15] California's prohibition against the citation of unpublished opinions applies only to opinions originating in California. (Cal. Rules of Court, rule 8.1115.) "Opinions from other jurisdictions can be cited without regard to their publication status," for their persuasive value. (*Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077.)

when followed by a directive to the texting party that he is to have no further contact with the trial judge.[16]

   d.   *The Timing of Judge Bowick's Disclosure Does Not*
        *Suggest an Appearance of Bias*

The school district argues that Judge Bowick took "half measures" and her "belated" disclosure did nothing to "rectify" the

---

[16] In its reply brief, the school district suggests that a "concern about the influence of judicial colleagues on the same court is why judicial divorce cases are assigned to another county and why appeals involving family members of justices of this district are assigned to other districts. (See, e.g., *Klein v. Hughes* (Aug. 28, 2003 order, A103940).)" The *Klein* citation appears to be to some court order that is not part of the record. The Court of Appeal decision in that case has nothing to do with divorce proceedings or disqualification and, in any event, is not published and therefore not citeable. (Cal. Rules of Court, rule 8.1115(a).) The school district cites no authority for the claimed out-of-county assignment of judicial divorce cases or cases involving a judge's family. Even if a particular trial court has an informal policy about transferring cases to another county when a matter involves the personal interests of one of that court's judges, that is not this case. (See also Cal. Com. Jud. Ethics Opns., Oral Advice Summary No. 2016-015 [presiding judge may not disqualify an entire bench but may make an administrative assignment of a case to another court] https://www.judicialethicsopinions.ca.gov/wp-content/uploads/cjeo_oral_advice_summary_2016-015.pdf [as of Mar. 8, 2023], archived at <https://perma.cc/5YAH-KVGL>; see also Cal. Judges Assn., Jud. Ethics Com., Opn. No. 62 https://www.caljudges.org/docs/Ethics%20Opinions/Op%2062%20Final.pdf [as of Mar. 8, 2023], archived at <https://perma.cc/8QWR-NF8P>; Cal. Judges Assn., Jud. Ethics Com., Opn. No. 63 https://www.caljudges.org/docs/Ethics%20Opinions/Op%2063%20Final.pdf [as of Mar. 8, 2023], archived at <https://perma.cc/42N5-Z8B5>.)

problems caused by Judge Byrdsong's conveyed bias. California Code of Judicial Ethics, canon 3E(2)(a) provides that, in all trial court proceedings, a judge shall disclose "information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification." Whether Judge Bowick had an obligation to disclose earlier that Judge Byrdsong told her Ross's attorneys were from his old firm, or that it was Judge Byrdsong who had greeted the attorneys in her courtroom, or that it was Judge Byrdsong who had briefly watched the proceedings from the audience until she asked him to leave is an incomplete statement of the issue before us. The more appropriate inquiry is whether the disclosures Judge Bowick actually made or did not make would lead a person aware of the facts to reasonably entertain a doubt about her ability to be impartial. In ruling on the motion, Judge Hernandez concluded that the objective person would not. We agree.

## DISPOSITION

The petition for writ of mandate is denied. Ross shall recover his costs in this proceeding from the school district.


RUBIN, P. J.

WE CONCUR:


BAKER, J.                    WILEY, J.*

---

*       Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

28